UNITED TRANSIT COMPANY *vs.* RAYMOND H. HAWKSLEY,

*General Treasurer.*

JULY 5, 1957.

PRESENT: Flynn, C. J., Condon, Roberts, Andrews and Paolino, JJ.

PAOLINO, J.   This action of assumpsit was tried before a justice of the superior court sitting without a jury. The declaration is in five counts to each of which the defendant filed a plea of the general issue.   At the trial the plaintiff waived its right to proceed on the first three counts, which involved the years 1949, 1950 and 1951, and relied only on the fourth and fifth counts in so far as they related to the taxable year 1952.   Thereafter a decision was entered for the defendant for costs.   The case is before us on the single exception of the plaintiff to such decision.

The fourth count alleges in substance that plaintiff paid under protest to the tax administrator of the state the sum of $91,377.03, assessed against it for the taxable year 1952, as a gross earnings tax on its earnings as a street railway corporation under the provisions of general laws 1938, chap-

ter 38, as amended by public laws 1942, chap. 1212, article VI, and that said tax administrator paid the money thus collected to defendant in his capacity as general treasurer of the state of Rhode Island. The fifth count contains the common counts, so called.

The record shows that plaintiff duly filed with the tax administrator a claim for a refund of the amount paid as aforesaid; that the claim was disallowed; and that thereupon the instant action was filed by plaintiff. The plaintiff based its payment of the tax under protest, as well as its action in the superior court, on the ground that it was not a street railway corporation in 1952 and that, therefore, no tax was properly assessable against it for said year under the provisions of chap. 38, as amended.

The trial justice filed a rescript in which, after carefully reviewing the evidence, he found as a fact that plaintiff for some time prior to the year 1952 had not operated streetcars propelled by electricity upon steel rails laid in the highways of Providence and other municipalities of the state. However, after he reviewed the evidence relating to the manner in which plaintiff operated its business in 1952, he held that, notwithstanding the fact plaintiff operated only trackless trolleys and motor busses in said year, it was a street railway corporation under the terms of its charter in 1952 because it still retained its right to operate street railways and therefore he concluded: "The corporation exists as a street railway corporation and it is for this privilege of existing as such that it is taxed." He further held that since plaintiff corporation did exist as a street railway corporation, it was required, under the provisions of chap. 38, as amended, to pay as a tax a definite percentage of its income regardless of the source of such income.

The plaintiff contends that since its entire operation in 1952 was carried on by means of trackless trolleys and busses, the use of streetcars on rails having been abandoned long before 1952, the superior court erred in holding that

plaintiff was in said year taxable as a street railway corporation under the provisions of chap. 38, as amended, on the ground that its charter authorized it to operate as a street railway. The plaintiff argues that the test of liability for the tax in question is not the fact that authority to operate a street railway exists by virtue of its charter, but rather whether plaintiff actually carried on a street railway business during the taxable year involved.

The plaintiff further contends that, in any event, the charter amendment in 1952 completely terminated its authority to operate a street railway and, therefore, the superior court was in error in holding that "when the charter was amended in 1952 and the corporation was authorized specifically to operate trackless trolleys and busses it even then did not give up its right to operate street railways but retained that authority." In support of this the plaintiff argues that it was clearly the intent of the legislature to substitute in the charter "trackless trolleys, busses and other vehicles" as the means of transportation in place of street railways.

It is also the contention of plaintiff that in operating a public transportation system by means of trackless trolleys and busses, it was not a "street railway corporation" within the meaning of the pertinent tax statute; that taxing statutes must be strictly construed against the state and may not be extended by implication; that a clear distinction exists between street railways on the one hand and busses and trackless trolleys on the other; and that a system operated without rails in the streets is not a street railway.

Finally plaintiff contends that it should be taxed under G. L. 1938, chap. 37, as an ordinary business corporation in the same manner as all other transit companies operating in this state. The plaintiff argues that it would be unjustly discriminatory to continue to impose a tax based upon gross earnings since it no longer operates as a street

railway within the meaning of chap. 38, as amended, and that it did not so operate in 1952.

The facts in the instant case are not in dispute. The only question is whether the superior court erred in applying the provisions of chap. 38, as amended, in deciding for defendant. A determination of this issue depends upon the character of the plaintiff corporation in the calendar year 1952 as to whether it was a street railway corporation within the meaning of chap. 38, as amended, and, as such, subject to an assessment of a tax based on its gross earnings in accordance with the provisions of said statute. To determine the character of plaintiff corporation it is necessary not only to look at its method of operation, but also to examine the powers conferred upon it by its charter as well as the language of the pertinent taxing statute. In other words we must consider not only how it performs its service under its corporate powers but also what is the essential nature of such service and whether it has been radically altered by the statutory amendments relied upon by plaintiff.

United Electric Railways Company was incorporated by act of the general assembly of this state in 1919, Rhode Island Acts and Resolves 1919, page 275. By sec. 3 of its charter it was authorized and empowered "to acquire, own and operate street railways by electricity or by such other motive power (except steam) as it may determine * * *." By the same section it was also empowered to acquire, own and operate any part or all of the properties then owned or operated by several pre-existing street railway companies expressly named in sec. 3 and, also, to construct, own and operate, with the approval of the public utilities commission any extension or addition to any street or other railways so acquired.

Thereafter, from the date of its organization, the plaintiff operated a street railway in various cities and towns in this state. However, in 1922 it began to abandon its street

railway lines and to substitute in their place bus and trackless trolley service, the latter being passenger vehicles with pneumatic rubber tires running on the pavement without tracks or rails and powered by electricity drawn from wires suspended above the street or highway, with a range of approximately sixteen feet on either side of the overhead wires. The motor busses were self-propelled vehicles, powered by gasoline motors.

On May 15, 1948, plaintiff abandoned its last remaining streetcar line. Thereafter, it removed and scrapped all of its street railway overhead wires and equipment. In 1948 plaintiff began to remove its tracks from the streets and highways on which it had previously operated railways. By 1952 approximately fifty miles of tracks still lay in the streets and highways. However, a portion of such tracks was covered over with paving material and the remaining tracks were disconnected and inoperable as railways.

The record shows that plaintiff's charter was amended several times by acts of the general assembly in 1920, 1921 and 1951, but those amendments are not material in the instant proceeding. However, by act of the general assembly approved April 29, 1952, the act incorporating the United Electric Railways Company was amended to change the name of the corporation to United Transit Company. In addition, sec. 3 of the charter was amended to read in part as follows:

"Said corporation shall have power to acquire, own and operate *trackless trolleys, busses and other vehicles* by electricity or by other motive power (except steam) as it may determine in all the cities and towns in the counties of Providence, Bristol, Washington and Kent * * * ." (italics ours)

However, it must be noted that the powers which had been granted in sec. 3 of the 1919 charter were retained in sec. 3 of the 1952 amendment, without change, as follows:

"* *. * and it shall have power to acquire, own and operate any part or all of the properties now owned or

operated by The Rhode Island Company, the Union Railroad Company, the Providence Cable Tramway Company, the Pawtucket Street Railway Company, the Rhode Island Suburban Railway Company, the Sea View Railroad Company and the Providence & Danielson Railway Company in any or all of said cities and towns, *and also to construct, own and operate, with the approval of the public utilities commission, any extension or addition to any street or other railways so acquired * * *.*" (italics ours)

Acts and Resolves 1952, page 634.

General laws 1938, chap. 38, §1, provided for an annual tax upon the gross earnings of every street railway corporation from its earnings in this state. However chap. 38 was repealed by P. L. 1942, chap. 1212, art. VI. Section 1 A thereof provides:

"Every corporation enumerated in section 2 of this article, all hereinafter referred to under the term 'utility,' incorporated under the laws of this state shall annually pay a tax or excise to the state for the privilege of *existing as such during any part of the preceding calendar year.*" (italics ours)

The pertinent portion of sec. 2 thereof, which deals with rates of tax, provides as follows:

"The tax hereby imposed shall be computed at the following rates;

A. In the case of every corporation the principal business of which is a steamboat or ferryboat business as a common carrier, every common carrier steam or electric railroad corporation, *every street railway corporation* * * * 1¼ per centum of its gross earnings * * *." (italics ours)

A careful reading of plaintiff's charter and the pertinent portions of secs. 1 A and 2 of art. VI, *supra,* has convinced us that the superior court did not err in holding that plaintiff was a street railway corporation within the meaning of G. L. 1938, chap. 38, as amended by P. L. 1942, chap. 1212, art. VI.

We have examined the cases of other jurisdictions cited

by plaintiff in support of its contention that a corporation operating trackless trolleys and gasoline busses is not a street railway corporation. In our opinion, they are not applicable to the instant action which must stand or fall on the special terminology of plaintiff's charter and on what may be reasonably construed to be the scope of the language of the pertinent Rhode Island taxing statute.

It is undisputed that up to the time of its amendment on April 29, 1952, the charter, by express terms, empowered and authorized the plaintiff corporation to operate street railways by electricity. Therefore, notwithstanding the fact that during the tax period in question it carried on its operations by the use of trackless trolleys and motor busses and not by streetcars on rails, it is nevertheless abundantly clear that at least up to the date of the amendment of its charter in April 1952 it was still empowered to operate streetcars on rails. In these circumstances there is no doubt that plaintiff was a street railway corporation, whether or not it exercised its power to so operate. It is therefore our opinion that plaintiff did exist as a street railway corporation during a part of 1952 by the express terms of its charter.

The question remains whether the character and nature of plaintiff corporation was effectively changed by the 1952 amendment of its charter. It is true that by this amendment plaintiff was authorized to change its corporate name and it was further authorized specifically to operate trackless trolleys and busses. However, it is equally true that nowhere in said amendment did the legislature by express language deprive plaintiff of any of its existing powers. After carefully reading the 1952 amendment, we cannot agree with plaintiff's contention that such amendment completely terminated its authority to operate a street railway. In our opinion, a reading of the amended charter discloses clearly that by such amendment plaintiff did not give up its right to operate a street railway but retained it, and

that the charter as amended still expressly empowers plaintiff to operate street railways.

In reaching a decision on the ultimate issue raised in the instant case, it is our opinion that the charter and the pertinent taxing statute must be considered together. The question therefore remains whether, in the circumstances, the provisions of chap. 38 apply. In other words, is the plaintiff, which clearly exists as a street railway corporation, liable for the gross earnings tax imposed by chap. 38, as amended, notwithstanding the fact that it did not actually operate as a street railway in the taxable year 1952? The answer naturally depends upon the intent of the legislature as expressed by its language in chap. 38, as amended.

It is well established that statutes imposing a tax will not be extended by implication or inference to cover subjects not expressly included within the plain meaning of the statute. See *Manning* v. *Board of Tax Comm'rs,* 46 R. I. 400. It is also true that in the construction of a statute words used are to be given their plain meaning unless a contrary intention clearly appears, and that, except in the case of equivocal and ambiguous language, the words of a statute cannot be interpreted or extended but must be applied literally. See *Korjian* v. *Boghigian,* 60 R. I. 73, *Romano* v. *Napolitano,* 75 R. I. 512, and *State* v. *Nadeau,* 81 R. I. 505.

The language of the pertinent portions of P. L. 1942, chap. 1212, art. VI, is, in our opinion, unambiguous. Section 1 A thereof clearly provides that every corporation enumerated in sec. 2 of art. VI, incorporated under the laws of this state, "shall annually pay a tax or excise to the state *for the privilege of existing as such during any part of the preceding calendar year.*" (italics ours) Section 2 thereof, which deals with rates of tax, provides: "The tax hereby imposed shall be computed at the following rates; A. In the case of * * * every street railway corporation * * * 1¼ per centum of its gross earnings * * *."

Since we have already concluded that plaintiff was a street railway corporation, not only for a portion of the calendar year 1952 but for the full year, it is our opinion that it existed as such within the meaning of G. L. 1938, chap. 38, as amended, and therefore it is subject to the payment of the tax assessed, as expressly stated in the statute, "for the privilege of existing as such," and is required to pay as a tax or excise for the privilege of so existing $1\frac{1}{4}$ per centum of its gross earnings in 1952, irrespective of the source of such earnings.

The trial justice stated in his rescript that if the charter in the instant case is unrealistic, relief must be sought from the legislature and not from the courts. We agree with his statement, since it is well established that the policy or wisdom of a statute or its fairness and equity is not for the courts to determine so long as it violates no rights guaranteed by the federal or state constitution. *Powers* v. *City of Pawtucket*, 79 R. I. 229; *Board of License Comm'rs* v. *Daneker*, 78 R. I. 101.

The plaintiff's exception is overruled, and the case is remitted to the superior court for entry of judgment on the decision.

FLYNN, C. J., did not participate in the decision.

*Armstrong & Gibbons, Walter F. Gibbons, Higgins & McCabe, James A. Higgins,* for plaintiff.

*William E. Powers,* Atty. Gen., *Archie Smith,* Ass't Atty. Gen., for defendant.