337 A.2d 226.

POTOWOMUT GOLF CLUB, INC. *vs.* JOHN H. NORBERG, *Tax Administrator.*

MAY 9, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

590

KELLEHER, J. We have issued a writ of certiorari pursuant to the Administrative Procedures Act, G. L. 1956 (1969 Reenactment) §42-35-16. The petitioner, Potowomut Golf Club, Inc., is seeking our review of a Superior Court order which upheld the tax administrator's assessment of a deficiency as to certain sales tax due the state.

Potowomut Golf Club provides more than exercise for its members—it also serves food and liquor to them and their guests. It seems, however, that the members were more interested in the first eighteen holes than the proverbial nineteenth, because in 1966 the board of governors, which is charged with operating the club, was faced with an economic problem. Its members were not buying enough victuals and liquor refreshments to make the club's restaurant profitable. The board voted to raise the needed money by imposing a "* * * $15 per month minimum charge * * * [on] all Golf-playing members * * * this charge to be applied against food and liquor, not to include entrance fees to social events * * *." In 1968, the resolution was amended so that the charge would be applied only against food purchases. Thus, if a member consumed at least $15 per month in foodstuffs, he would not incur any additional

charges by the club, but if he consumed less, he would be assessed the difference between the amount of his consumption and the $15 fee.

The club, recognizing that any sale of food to its members was subject to the 5 percent sales tax, G. L. 1956 (1970 Reenactment) §§44-18-7 and 44-18-18, duly complied with all the taxing laws and paid the tax on its gross receipts realized from the actual sale of food. It did not pay any tax on the $15 fee or the remainder of such fee which represented unconsumed food.

Upon an audit of the club's books, the tax administrator determined that any unused portion of the monthly minimum charge was also subject to the sales tax, and assessed the deficiency on the total amount of the unused portion of the $15 fees that remained in the food charge account. The club objects to this particular assessment, and the correctness of the administrator's decision is the sole issue before us.

. Rhode Island imposes a tax on all retail sales at the rate of 5 percent of the gross receipts from such sales. Section 44-18-18. "Gross receipts" comprise the total amount received in respect of the sale price of the retail sales of all retailers. Section 44-18-13.

Section 44-18-7 classifies nearly a dozen different transactions as sales. The two that are pertinent to this controversy are §§44-18-7C and 44-18-7D. Subsection C defines the following as a sale: "The furnishing and distributing of tangible personal property for a consideration by social, athletic, and similar clubs and fraternal organizations to their members or others." Subsection D defines a sale as: "The furnishing, preparing, or serving for a consideration of food, meals, or drinks, including any cover, minimum, entertainment, or other charge in connection therewith." The club takes the position that only an actual sale of food is taxable by virtue of §44-18-7C. The tax administrator

concentrates his fire on §44-18-7D. The statute, he says, includes within a taxable sale any "minimum charge" which is connected with the preparation, furnishing, or serving of food. As justification for his actions, the administrator relies on the language of §44-18-7D, the language used by the board in its resolution where it speaks of a $15 "minimum charge," and to the undisputed fact that the charge is related to the furnishing of food. On the other hand, the club argues that its unexpended food fees do not come within the statutory reference to minimum or cover charges but are in actuality special assessments or additional membership dues, both of which admittedly are not subject to any sales tax. We agree with the club.

In determining the nature of the club's receipts in this assessment, we are guided by the basic proposition that taxing statutes are to be strictly construed against the taxing authority. "Doubts as to the construction of [taxing] laws of this character are to be resolved in favor of the taxpayer. The legislative intent to impose the burden of a tax is not to be found by implication nor conjecture. Before approving an assessment a court may well require that its authorization be clearly and explicitly expressed in the law." *Manning* v. *Board of Tax Comm'rs*, 46 R. I. 400, 410, 127 A. 865, 870 (1925); *United Transit Co.* v. *Hawksley*, 86 R. I. 53, 133 A.2d 132 (1957).

Our function in interpreting the statute at issue here is no different than when we are faced with the task of construing any law to ascertain the legislative intent. In so doing, we assume that the Legislature, when it employed the language of §44-18-7C and §44-18-7D, intended to give it its ordinary plain meaning and sense in the context within which it is used. *United Transit Co.* v. *Hawksley, supra*. Although the Legislature and the golf club resolution both employ the term "minimum charge," the differing contexts in which the term is used lead us to conclude that different

meanings were intended. The Legislature in enacting §44-18-7D obviously was attempting to anticipate the problems which would arise when a nightclub operator or an owner of a restaurant tried to segregate his gross receipts into those which came from the actual purchase and consumption of food or liquor and those which came from a so-called cover or minimum charge. Foreseeing the problems of factual proof and recordkeeping that could arise, and recognizing that such cover and minimum charges were so intertwined with the actual serving of the food or drink, the legislation mandated their taxation. However, the minimum charge assessed by the club in this case is of a different nature. Even if a club member never enters the dining room and never orders so much as a cup of coffee, he will be charged the $15 fee. The relationship between the fee and the food actually consumed is more tangential.

The Legislature in employing the words "minimum charge" to describe that part of the gross receipts subject to taxation clearly did not intend to include a minimum charge such as that assessed against the golf club's members. The plain and common meaning of the phrase "minimum charge" does not encompass such assessments as that placed upon its members by the Potowomut Golf Club.

The burden here is on the tax administrator to overcome the presumption of nontaxation. His mere reference to the language of the statute has not convinced us that the Legislature intended to impose a sales tax upon any remaining balance of each monthly $15 assessment.

While our research has failed to uncover a case exactly in point, we do note that the California Sales Tax Counsel has issued a ruling to the effect that amounts paid to meet minimum food and drink requirements imposed upon country club members are to be considered additional costs of membership rather than taxable additional amounts paid for food. The rationale adopted there was that the purpose

of the minimum requirement was to keep the restaurant at a break-even level in lieu of making up a deficit from other club accounts, dues, or assessments and thus the members have a social reason for paying the minimum although no tangible personal property which would be subject to taxation is consumed. California Sales Tax Counsel Ruling, July 22, 1969, found in CCH All State Sales Tax Reports ¶2-025.09 at 2033; ¶7-150.09 at 7221 (1974).

The federal courts have also faced the problem of differentiating dues or membership fees from charges for food and liquor. Until its repeal in 1966,[1] and excise tax was imposed by the federal government upon all dues or membership fees above a certain minimum imposed by social clubs. Internal Rev. Code of 1954, §4242. In litigation revolving around the taxability of minimum drink and food purchase requirements of country clubs, the federal courts have been faced with a problem the direct counterpart of ours. In those cases the roles were reversed; the taxing authority did its utmost to argue that the minimum purchase requirements were the equivalent of dues or membership fees, whereas the clubs strove just as hard to convince the court that the charges were actually tied to purchases of food and other tangible personal property not subject to the federal excise tax. The federal courts are in near unanimous agreement that such minimum purchase requirements are dues and membership fees and are subject to the federal tax. The courts found the controlling factor to be that such minimum purchase requirements were shared equally by all club members. As our brethren of the 7th Circuit Court of Appeals have said, " 'The [minimum purchase] deposit is a payment required as a condition of continued membership, as a device for imposing on each member a minimum contribution as his share of the operating expense of maintaining a club activity. There was no neces-

---

[1]Act of June 21, 1965, Pub. L. No. 89-44, Title III, §301, 79 Stat. 145.

sary equivalence between the payment and the benefit received, since this payment had to be made whether or not the member ever availed himself of the use of the club restaurant.' " *Freeport Country Club* v. *United States*, 430 F.2d 986, 991 (7th Cir. 1970), quoting from *Boyden* v. *United States*, 218 F. Supp. 220 (D. Mass. 1963); *see Wichita Club* v. *United States*, 454 F.2d 135 (5th Cir. 1972); *Cohen* v. *United States*, 381 F.2d 383 (Ct. Cl. 1967); *Twinbrook Swimming Pool Corp.* v. *Comptroller of Treas.*, 274 Md. 88, 333 A.2d 49 (1975).

We find ourselves in agreement with the almost unanimous expressions of the federal courts as regards that unused portion of the $15 fee paid by members of the Potowomut Golf Club which is not related to purchases of food but is instead assessed equally among all members. We therefore hold that an assessment being shared equally by all members and not levied as a charge in direct proportion to any benefit received is a dues or membership fee and thus not subject to a sales tax under the minimum-charge language of §44-18-7D.

We would also add that the club's minimum charge is due regardless of whether or not the member makes any use of the restaurant's facilities. The minimum charge referred to in the statute, however, contemplates that it will be paid only if the patron comes onto the taxpayer's premises and makes some use of the facilities.

The petition for certiorari is granted, the judgment entered in the Superior Court is quashed, and the papers in the case are ordered returned to the Superior Court with our decision endorsed thereon.

*Rabinowitz & Zimmerman, Coleman B. Zimmerman,* for petitioner.

*Richard J. Israel,* Attorney General, *W. Slater Allen, Jr.,* Asst. Attorney General, *Perry Shatkin,* Chief Legal Officer (Taxation), for respondent.