**ST. LOUIS COUNTRY CLUB, et al., Appellants,**

v.

**ADMINISTRATIVE HEARING COMMISSION OF MISSOURI, et al., Respondents.**

No. 64289.

Supreme Court of Missouri,
En Banc.

Sept. 20, 1983.

Juan D. Keller, David T. Karzon, Jr., St. Louis, for appellants.

John Ashcroft, Atty. Gen., Jay Daugherty, Richard L. Wieler, Asst. Attys. Gen., Jefferson City, for respondents.

BLACKMAR, Judge.

This action is brought to review the Administrative Hearing Commission's determination that private country clubs, which are not open to the general public, must pay sales tax on fees charged to members when they bring guests to enjoy certain club facilities. Because the case involves construction of the revenue laws, this Court has jurisdiction pursuant to Mo. Const. Art. V, § 3. We conclude that the assessment of sales tax was in accordance with the law.

St. Louis Country Club and Algonquin Country Club are Missouri not-for-profit corporations which provide their members with golf, tennis, swimming, and clubhouse facilities. The clubs are exempt from both federal and state income taxes under § 501(c)(7) of the Internal Revenue Code of 1954 and parallel provisions of state law. St. Louis Country Club's budget regularly shows a deficit, and Algonquin imposes special assessments on members at the end of the year in order to make up any deficit.

In contrast to the public and semi-private clubs, St. Louis and Algonquin Country Clubs, as private clubs, do not derive revenue from fees charged to members of the general public, and severely restrict non-member usage of club facilities. Non-members are allowed to use the facilities only as guests accompanied by members, and members are billed later for their guests' use of the club facilities. Both clubs are prohibited by their bylaws from collecting fees or any other charges from non-members, and do not handle cash. St. Louis Country Club prohibits a member from inviting a particular guest more than two times per year. Other private clubs typically restrict introduction of individual guests to four occasions per year.

The clubs did not report sales taxes on guest fees for the period April 1, 1977, through January 31, 1979. The Department of Revenue issued an assessment of unpaid sales tax against St. Louis Country Club for $2,207.76, for guest fees for golf and tennis, and against Algonquin Country Club for $2,723.29, for guests' golf fees, based on a finding that the guest fees were taxable admission charges under § 144.020.-1(2), RSMo 1978.

On appeal to the Administrative Hearing Commission the action by the Department of Revenue was upheld. St. Louis and Algonquin Country Clubs appeal the Administrative Hearing Commission's ruling. We affirm.

### 1. *The Validity of the Assessments*

The taxpayers assert that, without respect to the merits, the assessments are procedurally defective. We reject each of the three arguments presented.

■ It is first claimed that the assessments are invalid because they were not made personally by the Director of Revenue, but rather were signed by Ruth Schneider, an employee of the Department of Revenue. The claim is fully answered by our opinion in *Brown Group, Inc. v. Administrative Hearing Commission,* 649 S.W.2d 874, 877–78 (Mo. banc 1983), in which we held that the Director of Revenue may delegate authority to subordinates in processing assessments. It would indeed be impossible for the office to function without delegation. The notice of the assessments here involved states, "This assessment is the final decision of the Director of Revenue...." It is entirely in order for the Director to authorize subordinates to authenticate assessments made in accordance with established office procedures. Nor is there any requirement that notice of the delegation to a particular employee be filed or published, or that internal procedures be formalized by rule.

■ The taxpayers next argue that the Director of Revenue is "estopped" by reason of a letter written in 1974 by the then General Counsel of the Department of Revenue to a partner in a public accounting firm in St. Louis, stating that it was not the policy of the Department to assess sales tax on transactions such as are involved here. We held in *Blue Springs Bowl v. Spradling,* 551 S.W.2d 596, 600 (Mo. banc 1977), that the incidence of taxes is determined by law, and that the Director of Revenue and his subordinates have no power to vary the force of a statute. All that these employees can do is to state the current policy of the Department. They cannot bind future Directors, or limit the state's right to collect taxes properly owing. *See also Bartlett and Company, Grain v. Director of Revenue,* 649 S.W.2d 220 (Mo.1983). There might conceivably be a case in which a taxpayer sought a ruling as to the tax incidents of a particular transaction, and relied on the ruling in deciding whether or not to enter into the transaction, but there is absolutely nothing that indicates that these taxpayers would have done anything different if they had not had the 1974 letter. This letter, furthermore, was not a formal ruling as contemplated by 12 CSR 10–3.003 and its predecessor rules, because it was not addressed to the taxpayer. The letter, then, does not foreclose assessment of the sales taxes.

■ Appellant St. Louis Country Club also argues that a part of the assessment against it is invalid because of the expiration of the two-year period allowed by § 144.220, RSMo 1939, within which the Director may challenge sales tax returns. This taxpayer executed a voluntary waiver of the limitation period, but now argues that this waiver is invalid and of no effect. It cites cases holding that contract provisions extending the statute of limitations for actions on that very contract are invalid. It also observes that the federal statutes provide express authority for the waiver of the limitation period by agreement between Internal Revenue Service and the taxpayer, while state statutes lack similar provisions.

We hold that the waiver executed by this taxpayer is a valid contractual agreement, supported by consideration, and that it is

effective in accordance with its terms. The taxpayer might fear a hasty and inaccurate assessment if it declined to enter into a waiver agreement requested by the revenue authorities, or might believe that, by entering into the waiver agreement, it could possibly negotiate a satisfactory resolution of the controversy. The element of reliance by the revenue authorities is apparent. The cases involving contractual waivers in advance of actual controversy do not cover the situations involved here. We conclude that a waiver entered into in order to permit further examination and possibly negotiation is not forbidden by any provision of law, serves a proper purpose, and should be given effect.

### 2. *The Merits of the Assessments*

■ The clubs allege that because they are private, non-profit, social organizations which are not "engaged in business" and the guest fees were not "paid to, or in any place of amusement, entertainment or recreation", their guest fees do not fall within the purview of §§ 144.010.1(8) and 144.020.-1(2).

Section 144.010.1(8) defines "sale at retail" as

> any transfer made by any person engaged in business, including sales of admission tickets, cash admissions, charges and fees to or in places of amusement, entertainment and recreation, games and athletic events.

Section 144.020.1(2) sets the rate of tax on such sales. Section 144.010.1(5) defines "person" to include "any individual, firm, copartnership, joint adventure, association, corporation, municipal or private, and whether organized for profit or not...." In § 144.010.1(2), "business" is defined as

> any activity engaged in by any person, or caused to be engaged in by him, with the object of gain, benefit or advantage, either direct or indirect.

■ Taxing statutes must be construed strictly, and taxes are not to be assessed unless they are expressly authorized by law. *United Air Lines, Inc. v. State Tax Commission,* 377 S.W.2d 444, 448 (Mo. banc 1964); *Canteen Corporation v. Goldberg,* 592 S.W.2d 754, 756 (Mo. banc 1980). Words standing alone are to be interpreted according to their ordinary meaning, *Blue Springs Bowl v. Spradling, supra,* but if a term is specially defined by statute the special definition must be given effect.

We conclude that the plain language of the governing statutes makes the guest fees in question subject to sales tax. The country clubs are surely "places of amusement, entertainment or recreation, games and athletic events," and therefore the fees they charge qualify as "sales at retail" under § 144.010.1(8). This in and of itself is not sufficient, however, unless it is also established that the taxpayers are "engaged in business" within the compass of § 144.010.-1(2).

That section gives a very special meaning to the term "business," which is not limited to ordinary commercial enterprises. Under § 144.010.1(2) "business" includes "activity engaged in by any person, or caused to be engaged in by him, with the object of gain, benefit or advantage, *either direct or indirect....*" (emphasis supplied). This language is very broad, and is surely designed to make transactions which might not otherwise be covered taxable. The issue is whether the "activity" of allowing the guests to use the facilities for a fee paid by their host is "with the object of gain, benefit or advantage, either direct or indirect," to the country clubs. The director does not have to show that the taxpayer has a purpose of maximizing revenue, or of deriving income from the general public.

There must be some benefit to the clubs in allowing guests to use the facilities, or they would not be received. Although the clubs want to restrict guests' use of their facilities to a sufficient extent that members' use is not infringed, the privilege of having guests is an obvious inducement to membership in the clubs. It is a benefit to the clubs because it is a benefit to their members, the majority of whom must want the privilege of bringing guests. The clubs, of course, exist only for the benefit of their members, many of whom undoubtedly con-

sider the opportunity to entertain guests to be important for social or business reasons. As a charge is levied for the guests' "recreation", the sales tax applies. Sections 144.-010.1(8)(a), and 144.020.1(2), RSMo 1978. It makes no difference who pays the charge.

Inasmuch as the case depends on the special provisions of the sales tax laws, the appellants' status insofar as federal and state income taxes are concerned is not significant and the copious citations to code sections, statutes, and regulations governing income taxes are not pertinent.

It is of no moment that the country clubs do not actively promote the use of their facilities by guests as a source of revenue, but rather substantially limit and burden the introduction of guests. The Administrative Hearing Commission did not have to accept all of the nuances of the taxpayers' evidence as to whether or not they sought to "discourage" guests. This is ample basis for a finding of at least an indirect benefit or advantage from guest fees, and we are obliged to accept the findings of the Commission if supported by "competent and substantial evidence on the whole record." Sec. 161.338, RSMo 1978.

The findings are adequately supported and the decision of the Administrative Hearing Commission is affirmed.

RENDLEN, C.J., HIGGINS and GUNN, JJ., and PREWITT, Special Judge, concur.

DONNELLY, J., dissents in separate opinion filed.

BILLINGS, J., dissents and concurs in separate dissenting opinion of DONNELLY, J.

WELLIVER, J., not sitting.

DONNELLY, Judge, dissenting.

I respectfully dissent.

Section 144.010.1(2) defines "business" as any activity engaged in by any person, or caused to be engaged in by him "*with the object of gain, benefit or advantage,* either direct or indirect" (emphasis supplied).

This statute, like all tax laws, is to be construed so as to give the words in the statute their plain and ordinary meaning. *Blue Springs Bowl v. Spradling,* 551 S.W.2d 596, 598 (Mo. banc 1977). Tax laws are to be construed strictly against the taxing authority, *Canteen Corp. v. Goldberg,* 592 S.W.2d 754, 756 (Mo. banc 1980), and where there is a reasonable doubt as to the meaning of a revenue statute, the doubt is resolved in favor of those taxed, C. Sands, Sutherland Statutory Construction, § 66.01 at 179 (4th ed. 1974); *United Air Lines, Inc. v. State Tax Commission,* 377 S.W.2d 444, 448 (Mo. banc 1964).

Testimony before the Commission revealed that members were charged guest fees for two purposes: to discourage non-member guests and to spread equitably the cost of club operations. As to the first purpose, if the object of charging the fees were to obtain some gain, benefit or advantage, then it is reasonable to assume that non-member guests would be encouraged rather than discouraged. However, the stringent restrictions on non-member usage, including the limitation on the use of all club facilities to a certain number of times per year and the requirement that the non-member be accompanied by a member, support the clubs' contention that their purpose was to discourage such use. Regarding the second purpose, testimony indicated that the member who brings in a guest puts an additional burden on the facilities; for that reason he is assessed an additional charge to offset that burden. The assessment of the additional charge to members for their guests obviates the need for a complex dues structure based on the usage by the member, his family, and his guests. Consequently, the guest fees are not intended to put the clubs in a better position than they were in before the member entertained his guest, but rather to counterbalance the additional burden imposed by that member on the club.

In my view, the facts in this case do not show that the charging of guest fees was engaged in by the clubs with the object of gain, benefit or advantage, whether direct or indirect, under the sales tax statutes.

The guest fees were in actuality special assessments or additional membership dues, neither of which is claimed to be subject to any sales tax. *See Potowomut Golf Club, Inc. v. Norberg,* 114 R.I. 589, 337 A.2d 226 (1975).

I would reverse.