**CONTEL OF MISSOURI, INC., The Kansas State Telephone Co. and Contel Systems of Missouri, Inc., Appellants,**

v.

**DIRECTOR OF REVENUE, Respondent.**

**No. WD 47737.**

Missouri Court of Appeals, Western District.

Oct. 26, 1993.

William D. Kolb, Wentzville, for appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., Gretchen Garrison Hunter, Asst. Atty. Gen., Jefferson City, for respondent.

Before BRECKENRIDGE, P.J., and LOWENSTEIN, and ELLIS, JJ.

LOWENSTEIN, Judge.

This case involves reliance by providers of telephone repair services on a letter from the Missouri Director of Revenue on whether sales tax would have to be remitted to the State on certain fees collected by the providers. The reader is advised at the outset the issue of reliance on such letters from the Director has been addressed by the legislature subsequent to the facts giving rise to the case at bar.

This appeal is taken by Contel of Missouri, GTE Midwest Incorporated, and several inter-related companies (hereafter referred to as appellants) seeking the review of conclusions made by the Administrative Hearing Commission (Commission) that appellants must pay sales taxes (both retroactively and prospectively) on the wire maintenance service they provide to their customers. The appellant companies dispute the retrospective declaration of tax liability by the state claiming; 1) their liability to collect the taxes should only be prospectively applied because of "a new interpretation of the law overruling past precedent"; and, 2) the government should be estopped from retrospectively collecting the taxes based on a letter written by the respondent Director of Revenue. This court affirms the findings of the Commission.

The facts are not in dispute. In April 1993, all appellants, each formerly subsidiaries of Contel Corporation, were merged into GTE Midwest. Appellants are telecommunication companies providing regulated telephone services to various Missouri subscribers. As part of their services they offered inside wire maintenance service, "Wire Care" and "Wire Care Plus", by agreement to its customer. By this agreement, the company serviced and repaired inside telephone wiring without any charges for labor. The customer paid a flat monthly fee which was a separate portion of their bill. If repairs were done by the appellant, charges for parts were added to the monthly fee and separately itemized and taxed.

On May 28, 1987, Continental Telephone Company of Missouri (one of the inter-related companies) requested a Missouri Sales Tax ruling on the taxability of the wire care plans from the Director of Revenue (Director). The Director sent his response dated June 15, 1987 which stated the service was not taxable but this interpretation:

"is subject to change in statutes by the General Assembly, and to changes in interpretation by courts or administrative agencies. If changes occur, the taxpayer who relies upon an outdated interpretation may be subject to additional taxes plus interest and penalties. For this reason the interpretation set forth above should be reviewed on a regular basis by the taxpayer who might be relying on it."

Subsequent to an audit where the appellants were taxed for their wire service plans, appellant Contel wrote a letter dated March 8, 1991, to the Director stating it was its understanding that the wire services weren't taxable and requested a statement of the Director's position. In a letter dated March 19, 1991, the Director stated that pursuant to. § 144.020 RSMo (1986) the service *was* taxable, and the June 1987 letter was an interpretation subject to change by statute or administrative or judicial interpretation.

On March 20, 1991, the Director audited Contel of Missouri, and issued sales tax assessments of $3,873.58, $454.07 in interest, and penalties of $296.86. On March 13, 1992, the Director audited Kansas State Telephone Co., d/b/a GTE of Eastern Missouri assessing taxes of $2,334.83, $293.40 in interest, and penalties of $117.29. On March 13, 1992 the Director audited Contel Systems of Missouri, Inc., d/b/a GTE Systems of Missouri assessing taxes of $69,859.75, $18,452.59 in interest, and penalties of $3,492.98. Appellants signed a waiver of the statute of limitations period allowing assessments for periods after July 1, 1988.

Appellants filed a complaint before the Commission seeking redetermination of the assessments issued against them regarding the wire care plans. The Commission upheld the tax assessments and interest but denied liability for the penalties. Appellants appeal the decision to retrospectively apply the tax; 1) because it is "a new interpretation of the law overruling past precedent;" and, 2) the

Director should be estopped from collecting the tax retroactively based on the June 15, 1987 letter.

Review is limited to a determination of whether the decision is supported by competent and substantial evidence upon the whole record; whether it was arbitrary, capricious, or unreasonable; or whether there was an abuse of discretion. *Phil Crowley Steel Corp. v. King*, 778 S.W.2d 800, 802 (Mo.App. 1989) (citing *Evangelical Retirement Homes of Greater St. Louis, Inc. v. State Tax Comm'n*, 669 S.W.2d 548, 552 (Mo. banc 1984)). The appellants' arguments are really subsets of the same argument—the taxes should not be assessed retrospectively.

 In their first point, appellants assert the later assessment of the tax is a break from clear past precedent therefore it should only be applied prospectively. They rely on *Sumners v. Sumners*, 701 S.W.2d 720 (Mo. banc 1985) and *Trans UCU, Inc. v. Director of Revenue*, 808 S.W.2d 374 (Mo. banc 1991), for the proposition the tax cannot be retrospectively assessed because the Director's later interpretation of § 144.020 establishes a new principle of law overruling clear past precedent established by the 1987 letter. These cases are not applicable under the present facts. *Sumners* and *Trans UCU, Inc.* both apply in situations regarding changes in binding *decisional* law. Where the change deviates from clear past precedent, the changed law should be applied only prospectively. In *Sumners*, the Supreme Court of Missouri set forth a three-part test to determine when an *overruling decision* should be given prospective effect only 701 S.W.2d at 724. The test is; 1) the decision in question "must establish a new principle of law . . . by overruling clear past precedent . . .;" 2) the court must "determine whether the purpose and effect of the newly announced rule will be enhanced or retarded by retrospective operation;" and, 3) the court "must balance the interest of those who may be affected by the change in the law, weighing the degree to which the parties may have relied upon the old rule and the hardship that might result to those parties from the retrospective operation of the new rule against the hardship to those parties would

be denied the benefit from the new rule." 701 S.W.2d at 724. In *Sumners* the Court held the "source of funds" rule used in property division in dissolution proceedings as announced in *Hoffmann v. Hoffmann*, 676 S.W.2d 817 (Mo. banc 1984), was to be applied only prospectively. Similarly, in *Trans UCU, Inc.*, the Court was faced with the issue of whether its holding in a previous case should be retrospectively applied using the *Sumners* test. The case before this court does not involve the application of new decisional law but, rather, the effect of an advisory opinion letter and a change in the opinion contained therein. The 1987 letter did not constitute decisional law indicating "clear past precedent" but, rather, it was an advisory letter which made it facially clear that it was subject to reinterpretation. The plain language of the letter advised its recipient to seek future review on the issue because it was subject to reinterpretation; furthermore, it warned them in the event of a subsequent interpretation they "may be subject to additional taxes plus interest and penalties." The Director's decision was not a break from prior precedent but, rather, it was a subsequent interpretation of the law of which Continental Telephone of Missouri had been warned. *See Bookwalter v. Brecklein*, 357 F.2d 78 (8th Cir.1966). Since the first prong of *Sumners* regarding a break from clear past precedent has not been satisfied, we need not examine whether the second and third prongs of the test are satisfied.

 The other point on appeal is whether the Director is estopped from retrospectively assessing the taxes because the appellants detrimentally relied on the 1987 letter. "As a general proposition, the doctrine of estoppel is not applicable to acts of a governmental body, and has been jealously withheld and only sparingly applied against governmental bodies and public officials acting in their official capacity when necessary to prevent manifest injustice." *Bartlett & Co. Grain v. Director of Revenue*, 649 S.W.2d 220, 224 (Mo.1983) (citing *Wallis v. County of St. Louis*, 621 S.W.2d 720, 725 (Mo.App. 1981). Though this result seems harsh because the stance of the taxing authority changed one-hundred and eighty degrees, without the courtesy of a notice to the busi-

nesses here involved, no such manifest injustice can be declared. Taxpayers have no vested right to rely upon an erroneous interpretation of the statute exempting them from taxation. *Id.* at 224; *St. Louis Country Club v. Admin. Hear. Comm'n,* 657 S.W.2d 614, 616 (Mo. banc 1983). While the Court noted in *St. Louis Country Club,* there "might conceivably be a case in which a taxpayer sought a ruling as to the tax incidents of a particular transaction, and relied on the ruling in deciding whether or not to enter into the transaction," thereby making estoppel appropriate. 657 S.W.2d at 616. There is no indication that is the case here, there is no indication the appellants would not have provided the service if they knew of the tax consequences. The appellants were advised the interpretation was subject to change and it was suggested they seek review again at a later time, and advised of the consequences if reinterpreted. The Director is not estopped from assessing the tax retrospectively since the appellants were warned of the possibility of a change in interpretation and the possible consequences of a change. There being no evidence, appellants based their determination to provide the inside wire service based on whether it would be taxed. The resulting change in interpretation does not rise to the level of "manifest injustice."

It is again noted this opinion has limited precedential value since the Missouri General Assembly has enacted a statute addressing the issue before this court today. Section 536.02–1, subd. 9, RSMo Cum.Supp.1992 generally states letter rulings issued to taxpayers by the Director are binding for a minimum of 3 years. This law was not in effect in 1987 when the Director wrote the letter in question in the case at bar. Too often the courts criticize the legislature for in-action. However, here is a case where in 1989 via H.B. 143, the general assembly itself added subsection nine to § 536.021 to prevent this type of situation from re-occurring.

The judgment of the Administrative Hearing Commission is affirmed.

All concur.