STATE of Missouri ex rel. A. S. ARENSON, Collector of Revenue, Appellant,

v.

CITY OF SPRINGFIELD, Missouri, a Municipal Corporation, Respondent.

No. 47368.

Supreme Court of Missouri,

En Banc.

March 14, 1960.

John M. Dalton, Atty. Gen., Robert R. Welborn, Asst. Atty. Gen., for appellant.

J. Weston Miller, Mayte Boylan Hardie, Miller, Fairman, Sanford, Carr & Lowther, Springfield, for respondent.

COIL, Commissioner.

The State of Missouri, through its collector of revenue, brought an action against the City of Springfield, a municipal corporation, for $41,640.60 with penalties and interest thereon as the amount allegedly due from the city to the state as accrued taxes for the period from August 1, 1954, to November 30, 1957, in connection with propane gas used in Springfield's buses operated by it in the city's transportation system. The case was tried by the court on an agreed statement of facts. The state has appealed from a judgment for the city.

Section 142.371 [1] imposes an excise tax of three cents a gallon on special fuel received, delivered, or placed in the fuel tanks of certain motor vehicles. It was and is the position of the city that the tax imposed is a use tax which the legislature had no power to impose on a city because of a constitutional prohibition. Article III, section 39(10) provides: "The general assembly shall not have power: (10) To impose a use or sales tax upon the use, purchase or acquisition of property paid for out of the funds of any county or other political sub-

[1]. All section references, not in connection with an article reference, are to sections of RSMo 1949, V.A.M.S., unless otherwise indicated; all section references in connection with article references are to articles and sections of the Missouri Constitution, 1945.

division." The trial court sustained the city's position and held, in effect, that the city was exempt from the payment of the tax imposed by section 142.371 by reason of the constitutional provision above quoted. The state's two-fold position was and is that a city is not a "political subdivision" within the meaning of article III, section 39(10), and, in any event, the tax imposed by section 142.371 is not on the *use* of property (propane gas) paid for out of city funds but was intended to be, and in reality is, a tax on the privilege of using the highways of the state, the amount of the tax being measured by the number of gallons of propane consumed to propel the city buses over those highways.

■ We have no doubt that cities are included within the meaning of the phrase "other political subdivisions" contained in article III, section 39(10). That subsection was proposed, debated, and originally adopted by the constitutional convention as a part of article X entitled "Taxation." Section 15 of article X provides that "The term 'other political subdivision,' as used in this article, shall be construed to include * * * cities, towns, villages, * * * and any other public subdivision, public corporation or public quasi-corporation having the power to tax." The debates in the 1943–1944 constitutional convention conclusively demonstrate that the members of the convention intended that municipalities be included within the meaning of "other political subdivision" as used in article III, section 39(10). In fact the debates show that the limitation on the legislature's power contained in article III, section 39 (10), was proposed primarily for the benefit of cities. Stenotype Transcription of Debates, 1943–1944 Const.Conv., pp. 5165–5192. Apparently the convention's committee on phraseology, arrangement, and engrossment recommended that the limitation on the legislative power contained in article III, section 39(10), be moved from the article on taxation to its present location among the listed respects in which the power of the general assembly is limit-

ed. It seems apparent that such a change in location of the subsection in question did not destroy its relation to the subject of taxation but that the change was made only because of the committee's preference arrangementwise, inasmuch as the limitation in question was also germane to the subject matter of article III, viz., legislative power. It is true, of course, that the constitution, as voted by the people of the state, was in its present arrangement, and, thus, that present article III, section 39 (10), was not a part of article X on taxation as it originally had been during its consideration by the convention; and it is also true that we have long held that the words "or other political subdivision" contained in article V, section 3, do not include cities for the purpose of determining this court's appellate jurisdiction. Neither of those considerations suggested by the state, however, change the obvious fact that, inasmuch as section 39(10) of article III deals with taxation, the meaning of "other political subdivision" therein must be the meaning ascribed to "other political subdivision" by section 15 of article X, the article on "taxation." It follows that the City of Springfield is a political subdivision within the meaning of article III, section 39(10).

Sections 142.010 through 142.350 of chapter 142, RSMo 1949 V.A.M.S., provide for a "Motor Vehicle Fuel Tax" which, as generally thought of, is the "gasoline tax." Sections 142.361 through 142.610 of the same chapter provide for the tax presently in question. Section 142.371 provides: "There is hereby levied and imposed an excise tax on the use (within the meaning of the word 'use' as defined herein) of special fuel in any motor vehicle at the same rate per gallon as the tax on motor fuels as imposed in section 142.020, RSMo 1949, or any amendment thereto. Said tax, with respect to all special fuel delivered by special fuel dealers into supply tanks of motor vehicles in this state, shall attach at the time of such delivery and shall be collected by such dealers from the special fuel users

and shall be paid over to the collector of revenue as hereinafter provided. Said tax, with respect to special fuel acquired by any special fuel user in any manner other than by delivery by a special fuel dealer into a fuel supply tank of a motor vehicle, shall attach at the time of the use (as herein defined) of such fuel and shall be paid over to the collector of revenue by the user as hereinafter provided."

Section 142.361 contains definitions and those here pertinent are: "1. As used in sections 142.361 to 142.610, the following terms shall mean: * * * (3) 'Motor vehicle' means any vehicle propelled by an internal combustion engine and licensed for operation or operated upon the highways. The term shall not, however, include farm tractors. (4) 'Special fuel' means and includes all combustible gases and liquids suitable for the generation of power for propulsion of motor vehicles, except that it does not include motor fuels as defined in section 142.010, RSMo 1949. (5) 'Use' means the receipt, delivery or placing of special fuels into the supply tank or tanks of any motor vehicle while such vehicle is within this state. (6) 'Special fuel dealer' means any person in the business of handling special fuel who delivers any part thereof into the supply tank or tanks of a motor vehicle not then owned or controlled by him. (7) 'Special fuel user' means the owner or other person responsible for the operation of a motor vehicle at the time special fuel is placed in the supply tank or tanks thereof while such vehicle is within this state * * *."

Section 142.600 provides: "Sections 142.-361 to 142.610 are to supplement the motor vehicle fuel tax act, chapter 142, RSMo 1949, by imposing a tax upon the receipt, delivery, or placing into the fuel supply tanks of motor vehicles in this state of all fuels not taxed under the said motor vehicle fuel tax act." (The foregoing section, presently 142.600, was section 3 of S.S.S.B. 269 as enacted by the 66th General Assembly and, of course, as passed, immediately followed present section 142.-

371 heretofore set forth. Laws Mo.1951, pp. 842, 843.)

It was agreed that the propane gas used in the city buses was "special fuel" and that the city was a "special fuel user" as those terms were defined in section 142.-361. It was also agreed that a "special fuel dealer" delivered the propane consumed by city buses to supply tanks owned by the city and thereafter the city placed the propane into the tanks of the respective buses. And there was no dispute that the city buses involved were "motor vehicles" as defined in section 142.361.

When the inapplicable portions of the foregoing pertinent section are deleted and the definitions of "use," "special fuel user" and of "motor vehicle" are substituted where indicated in section 142.371, that section reads: There is hereby levied and imposed an excise tax on the placing of special fuel into the supply tank of any vehicle, except farm tractors, propelled by an internal combustion engine and licensed for operation or operated upon the highways while such vehicle is within this state, at the same rate per gallon as the tax on gasoline as imposed by the preceding sections of this chapter. Such tax shall attach at the time the user places the special fuel into the vehicle's tank and shall be paid to the collector of revenue by the owner or other person responsible for the operation of the motor vehicle at the time the special fuel is placed in the supply tank thereof. It follows that it is accurate to say that section 142.371, read and construed in the light of the definitions contained in section 142.361, as above, and as applicable to the City of Springfield under the facts of this case, requires that city to pay three cents for its act of placing therein each gallon of propane which it puts into the fuel tanks of such of its buses as are licensed for operation on or are operated on the highways and that the tax so imposed attaches at the time the city places the propane in the fuel tank of each such bus.

It is agreed by the parties and there can be no question but that the excise tax pro-

vided for in section 142.371 *is imposed upon the owner's act of placing the propane in the respective bus fuel tanks.* Not only is that fact clear from the language of section 142.371 when the definition of the word "use" contained in section 142.361 is *substituted as it must be for the word "use"* as it appears in section 142.371, but the fact is made more certain by the express language of section 142.600 quoted above providing that the tax on special motor fuel was to supplement the tax on other motor fuel "by imposing a tax upon the receipt, delivery, or placing into the fuel supply tanks of motor vehicles in this state of all fuels not taxed under the said motor vehicle fuel tax act." And, of course, it is clear that we are presently dealing only with "placing" of propane into fuel tanks as distinguished from the "receipt" or "delivery" of such propane.

The city takes the position that its act of placing the propane gas into the respective fuel tanks of its buses constituted a "use" of that propane within the meaning of article III, section 39(10) and that the tax is therefore a "use" tax which may not be imposed on the city by virtue of the prohibition of article III, section 39(10). As we view the matter, however, the conclusion that a vehicle owner's *act of placing* propane into the tank of his vehicle is *a use of that propane* within the meaning of "use * * * of property" contained in article III, section 39(10), is so unlikely a construction of the meaning of "use" as to be wholly unacceptable. Certainly the legislature had the power and the right to place a tax on the "act of placing propane in a tank" and, if it chose, to call that tax a "use tax." But by so doing, the legislature did not make that tax, i. e., on the "act of placing," a tax on the "use * * * of property" within the meaning of the constitution [article III, section 39(10)]. In other words, the fact that the legislature called a tax on the "act of placing propane in a fuel tank" a tax on the "use" of propane did not make that tax a tax on the "use" of property within the generally ac-

cepted meaning of the word "use." Propane is not "used," in the sense that property is "used," by the act of placing it in a fuel tank—that act is preliminary to its use—it is "used" (in this case) when it is consumed in propelling motor vehicles.

It seems just as clear, however, that the fact that a tax is imposed upon a *vehicle's owner's act of placing propane gas in the fuel tank of his vehicle,* standing alone, furnishes little, if any, assistance in determining the nature of the tax which the legislature intended to impose. It seems to us, then, that to determine the kind of a tax the legislature intended to impose by the provisions of section 142.371, as read in connection with the preceding definitions of section 142.361, it is proper to look to the purpose which the legislature expressed as the reason for the enactment of the section imposing the tax, and, if indicated, the relation of that section to the preceding sections of the same chapter which imposed the so-called gasoline tax.

So doing, we again refer to section 142.-600 which, in its entirety, is: "This Act is to supplement the Motor Vehicle Fuel Tax Act, Chapter 142, R.S.Missouri, 1949, by imposing a tax upon the receipt, delivery, or placing into the fuel supply tanks of motor vehicles in this State of all fuels not taxed under the said Motor Vehicle Fuel Tax Act." The foregoing, as heretofore noted, was section 3 of the act when passed by the general assembly in 1951, so that present section 142.600 immediately followed what is now section 142.371. So that immediately after imposing the tax in question, the legislature made it clear in the next section that it had imposed the tax to *supplement* the motor vehicle fuel tax (gasoline tax) by imposing a tax on *all fuels not taxed under the sections imposing the gasoline tax.* And, further, section 142.371 imposed the tax on special fuel (in this case, propane) at the same rate as the tax on motor fuels imposed by preceding section 142.020. Section 142.020 is in part: "1. In order to provide funds for the construction and maintenance of the public

highways of this state and to pay the principal and interest on the road bonds of the state there is hereby provided for a license tax to produce a sum equal to three cents on each gallon of motor fuel used in propelling motor vehicles upon the public highways of Missouri to be collected as herein provided.

"2. For the privilege of receiving motor fuel to be sold for use in propelling motor vehicles upon the public highways of this state, there is hereby imposed upon every person receiving motor fuel in this state, a license tax equal to three cents per gallon on all motor fuel received to be sold for use in propelling motor vehicles upon the public highways of this state. * * *

"4. * * * Thereafter, except as otherwise provided in section 142.030, if said motor fuel is again sold the per gallon amount of the tax shall be added to the selling price of the fuel by any person who shall sell the same, and shall be collected from the purchaser, and so on, so that the ultimate consumer shall bear the burden of the tax as a part of the price of the motor fuel he purchases.

"5. Every person purchasing motor fuel in this state from any distributor or other person, shall pay, except as otherwise provided in section 142.030, to the distributor or other person from whom said motor fuel is purchased, the amount of the license tax which the distributor or other person is required by this chapter to add to the selling price of the motor fuel * *."

■■ Thus it appears that the gasoline tax is a license tax for the privilege of using the highways of this state and that, contrary to respondent's contention, the tax is imposed upon the ultimate consumer, not on the distributor, for the ultimate consumer is required to pay it even though the distributor initially collects the tax for the state in the sense that he is required to remit it in the first instance and then collect from his vendee, etc., until the ultimate

consumer becomes the ultimate payer. And, as noted, the section imposing an excise tax on special fuel was to supplement the act imposing the tax on gasoline.

It is also pertinent that the original "special fuel tax act" (H.B. 516, Laws Mo.1941, p. 448 et seq., as amended, Laws Mo.1943, pp. 657, 658), which preceded the present sections (142.361–142.610), stated in its title that it was "An Act relating to the taxation of fuel as defined herein; *to prescribe a privilege tax for the use of the public highways by owners and drivers of motor vehicles by imposing a specific tax upon the use within the State of Missouri of fuel as defined herein * * *.*" (Our italics.) "Use" was defined in that act as "the consumption of fuel by any person in a motor vehicle for the propulsion thereof upon the public highways of this State." And the tax imposed was "an excise tax of two (2c) cents per gallon on all users of fuel upon the use of such fuel by any person within this state only when such fuels are used in an internal combustion engine for the generation of power to propel motor vehicles upon the public highways of this state * * *."

Present sections 142.411–142.610 were enacted as heretofore noted in 1951 (Laws Mo.1951, p. 842) in lieu of the sections enacted in 1941 and amended in 1943, and the title of the 1951 act was: "An Act to repeal Sections 142.360 to 142.490, inclusive, Revised Statutes of Missouri, 1949, relating to the Motor Fuel Use Tax and to enact in lieu thereof fourteen new sections relating to the same subject; with an effective date." It will thus be seen that the legislature, when it enacted the present sections in 1951, referred to the then existing tax as a "Motor Fuel Use Tax," although the sections so referred to clearly imposed a tax on the consumption of fuel used to propel vehicles on the highway for the purpose of producing revenue to be used to maintain, construct, and repair roads; in other words, clearly imposed a privilege tax for the use of the highways. It seems, then, that when the legislature described that

prior tax (i. e., H.B. 516, Laws Mo.1941, p. 448) as a "use tax" it was thinking of "use" in the sense that the fuel was *used* for the specific purpose of propelling vehicles on the highways and that "use tax" as there employed did not indicate that the legislature intended to describe an excise tax on the "use" of fuel as such. Furthermore, if the 1951 act (S.S.S.B. 269, Laws Mo.1951, p. 842) is considered an amendatory act in that it enacted fourteen new sections "relating to the same subject" as dealt with by the sections which were replaced, then in that event the title of the 1941 act (H.B. 516, Laws Mo.1941, p. 448) continued to be the title of the 1951 act. Inter-City Fire Protection Dist. of Jackson County v. Gambrel, 360 Mo. 924, 231 S.W. 2d 193, 199[6-9]. And unless the title of the 1941 act continued to be the title of the 1951 act, it would appear that the 1951 act has no title.

It is true, as suggested by the city, that had the legislature intended that the tax imposed by present section 142.371 was to be a privilege tax for the use of the highways it could easily have said so, just as it did in section 142.020 (the section which section 142.371 supplemented) and, we add, just as it said in the sections of the law which the sections being presently construed repealed and replaced. And we concede that the fact that different language was used in section 142.371 than was used in imposing the tax in the section which it replaced and the fact that different language was used in section 142.371 in imposing the special fuel tax than was used in section 142.020 in imposing the gasoline tax, ordinarily would be persuasive of the probability that the legislature intended by the language used in section 142.371 to impose a different kind of a tax than the privilege tax imposed by section 142.020 and by the sections of the original special fuel tax act (Laws Mo.1941, p. 448).

█ The difficulty with the validity of any such conclusion, however, is that the language of section 142.371, which literally construed imposes a tax on an owner's act of placing fuel in a fuel tank, even when that language is construed in the light of the suggested conclusion, is not susceptible of the reasonable construction that the legislature intended that the act of placing propane in a fuel tank was a "use" of that propane within the meaning of the language, "use * * * of property" appearing in article III, section 39(10). We think it is more likely, under all the circumstances, and when we take into account the effect of the rule that a statute exempting from taxation is reasonably construed against the one claiming the exemption, and that no presumption is indulged in favor of the claimed exemption, Hern v. Carpenter, Mo., 312 S.W.2d 823, 826[1, 2], that the legislature intended by section 142.371 to impose the same type of tax as it had imposed on gasoline by section 142.020 and which it had theretofore imposed on special fuel by the prior act which the present special fuel tax act repealed than to speculatively say that the legislature must have intended a different type tax, or it would not have changed the language of imposition.

█ We are of the view that, considering all the circumstances, viz., the fact that the present special fuel tax act supplemented the gasoline tax act which clearly imposed a privilege tax for the use of the highways, the fact that the predecessor of the special fuel tax act also clearly imposed a privilege tax for the use of the highways, and the fact that there is no language in section 142.371, when construed in the light of the definitions contained in the preceding section 142.361, which indicates that the legislature intended to impose a different type of tax, the most reasonable conclusion is that the legislature intended by section 142.371 to impose on "special fuel user" a license tax for the privilege of using the highways, and that the amount of the tax due by each user was to be determined by the number of gallons of special fuel which the user placed in his vehicles to be used to operate those vehicles on the highways. We cannot escape the conclusion that the

legislature intended that the tax was to be imposed on the *use* of the highways and not on the *use* of the fuel consumed in using the highways. Certainly, it cannot be denied that city property (i.e., propane theretofore purchased by the city) was *used* in the process of using the highways, for clearly the propane which was paid for out of city funds was *used* in the sense that it was consumed in propelling the buses over the highways. But essentially the tax was not on the use of the propane as such; it was on the *use of the propane* only in the sense that the amount of propane used furnished the standard to determine the amount of tax due for highway use. The tax was essentially a privilege or license tax imposed for highway use. In reaching that conclusion we have given full consideration to the city's argument that just because the special fuel tax was enacted to supplement the gasoline tax does not mean that the special fuel tax was the same type of tax as imposed on gasoline, i.e., the legislature might choose to supplement revenue derived from a privilege tax with revenue derived from a "use" tax. While we agree that the legislature might well have done so, we think that it did not do so by the language of section 142.371 properly construed.

The city also says that because the tax, by virtue of the provisions of section 142.-371, attached at the time the city placed the propane in the respective bus fuel tanks, it therefore did not matter, as to the amount of tax due, whether the buses thereafter moved upon the streets or highways, which in turn, the city says, demonstrates that the tax was on the use of the fuel as such and was not a tax on the privilege of using the highways. That contention, however, in our judgment, overlooks the fact that section 142.361 defines a motor vehicle as those propelled by internal combustion engines "and licensed for operation or operated upon the highways" except farm tractors; and section 142.371 imposed a tax on placing special fuel (propane) in any "motor vehicle." It seems clear, then, that while the tax attached and was payable at the *time* the propane was placed in the fuel tank, it attached and was payable *only* when the propane so placed was to be used for operating the buses upon the highways.

We have examined the cases cited by the parties in support of their respective contentions. All of them, having to do with the construction of tax statutes, are from other jurisdictions and none is particularly helpful in arriving at the meaning of the sections of the Missouri statutes which we are called upon to construe. They construe statutes containing different language used under different circumstances. And while we do not consider that any case cited by either party is contrary to our present conclusion and while we think a few are generally supportive, we can perceive no reasonably apparent purpose to be served by our citing or discussing them.

The judgment is reversed and the case remanded for further proceedings consistent with the opinion herein.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court en banc.

HOLLINGSWORTH, C. J., and HYDE, STORCKMAN and DALTON, JJ., concur.

WESTHUES, EAGER and LEEDY, JJ., dissent.