The CITY OF SPRINGFIELD, Missouri, Appellant,

v.

DIRECTOR OF REVENUE, State of Missouri, Respondent.

No. 64759.

Supreme Court of Missouri, En Banc.

Nov. 22, 1983.

Howard C. Wright, Jr., Springfield, for appellant.

John Ashcroft, Atty. Gen., Melodie Powell, Asst. Atty. Gen., Jefferson City, for respondent.

GUNN, Judge.

At stake in this proceeding is the Director of Revenue's right legally to assess a sales tax on the City of Springfield's (City) revenues from certain park board activities. The City contends that the sales tax is not permitted under the exclusionary provisions of Mo. Const. art. III, § 39(10) which prohibit the imposition of "a use or sales tax upon the use, purchase or acquisition of property paid for out of the funds of any county or other political subdivision."

Appeal from the Director's decision to assess the sales tax was made to the Administrative Hearing Commission which upheld the Director. Appeal to this Court followed under the provisions of § 161.337, RSMo 1978. We affirm.

Most facts of the case were by stipulation.

The City operates pursuant to a home rule charter with its park board charged with the responsibility of operating parks, playgrounds and recreational facilities. As part of the parks system, a comprehensive recreational program has been established which has substantial user services. Fees seldom exceed and often do not meet the direct costs of the program, and most programs receive subsidies from property taxes. The golf program, as an exception, produced more revenue than costs, but its excess is utilized to offset other indirect costs. Funds to pay for the various activities, and the sales taxes to be imposed are appropriated and come from public funds of the City.

The gross receipts upon which the Department of Revenue has assessed sales tax are derived from sales of items at concession stands, fees charged for admission to softball games, the zoo and the use of and participation in a grand variety of other events, facilities and programs. It was

stipulated that no tax was assessed on matters exempted by § 144.030.2(17), RSMo Supp.1982.

It was also stipulated that the City's park properties had been purchased with tax revenues, donations, or from state or federal grants. Some concessions were provided as a service to participants in various park programs or park users, and the fees charged were based on the direct cost of the items sold plus labor.

The Director of Revenue determined that the City was liable for the sales tax imposed based on § 144.020.1(2), RSMo Supp.1982, and that decision was affirmed by the Administrative Hearing Commission.

Two issues have been raised for consideration: 1) Is the sales tax sought to be imposed violative of Mo. Const. art. III, § 39(10) as being a prohibited "tax upon the use, purchase or acquisition of property paid for out of the funds" of the City?; 2) Is the tax contemplated and authorized by § 144.020.1(2)? Each issue must be ruled adversely to the City.

■ It is clear that there is no constitutional prohibition to the sales tax here imposed. The sales tax is nothing more than a tax on gross receipts from the selling of goods or providing services at retail. It is evident that there is no tax on the use, purchase or acquisition of property paid for from City funds. *See State ex rel. Arenson v. City of Springfield,* 332 S.W.2d 942 (Mo. banc 1960), holding that the imposition of an excise tax on special parcel used by the municipal corporation was not inimical to Mo. Const. art. III, § 39(10) as being a tax on the use of city owned property but was only a tax for the use of state highways.

There is nothing to connect the retail sales tax in this instance with the constitutional prohibition against taxes referred to in art. III, § 39(10).

■ With regard to the second issue—statutory authorization of the tax—it is completely obvious that the tax is properly ordained by the application of §§ 144.010.-1(2), (5), (8)(a) and (9), RSMo Supp.1982, which define "business", "person", "sale at retail" and "seller" subject to the sales tax in such terms as to include the City in this instance. Section 144.020.1(2) brings the items of sales and the recreational activities of the City within the purview of the taxing statute.

Section 144.010.1(2) defines "business", in part, as:

... any activity engaged in by any person, or caused to be engaged in by him, with the object of gain, benefit or advantage, either direct or indirect.

Section 144.010.1(5) defines "person" as follows:

(5) "Person" includes any individual, firm, copartnership, joint adventure, association, *corporation, municipal or private,* and whether organized for profit or not, state, county, political subdivision, state department, commission, board, bureau or agency, except the state highway department, estate, trust, business trust, receiver or trustee appointed by the state or federal court, syndicate, or any other group or combination acting as a unit, and the plural as well as the singular number.

(Emphasis added.)

Section 144.010.1(8) provides:

"Sale at retail" means any transfer made by any person engaged in business as defined herein of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale in any form as tangible personal property, for a valuable consideration; ... [and]

it shall be construed to embrace:

(a) Sales of admission tickets, cash admissions, charges and fees to or in places of amusement, entertainment and recreation, games and athletic events.

Section 144.010.1(9) provides:

(9) The word "seller" when used in sections 144.010 to 144.510 means a person selling or furnishing tangible personal property or rendering services, on the receipts from which a tax is imposed under section 144.020.

Section 144.020.1(2) provides:

A tax is hereby levied and imposed upon all sellers for the privilege of engaging in the business of selling tangible personal property or rendering taxable service at retail in this state. The rate of tax shall be as follows: ...

(2) A tax equivalent to three percent of the amount paid for admission and seating accommodations, or fees paid to, or in, any place of amusement, entertainment or recreation, games and athletic events.

And precisely to the point is *St. Louis Country Club v. Administrative Hearing Commission of Missouri,* 657 S.W.2d 614 (Mo. banc 1983), which specifically applies the sales tax provisions of § 144.020.1(2) to fees and charges incurred by guests at private country clubs for use of club facilities. This Court in the *St. Louis Country Club* case concluded that the plain language of the taxing statute makes recreational fees subject to sales and found that country clubs were "places of amusement, entertainment or recreation, games and athletic events" with the fees charged qualifying as "sales at retail" under § 144.010.1(8). So, too, it is apparent that the recreational facilities provided by the City in this instance would fall within the same taxing category and holding of the *St. Louis Country Club* case.

The findings of the Administrative Hearing Commission upholding the assessment of the sales tax are adequately supported and its decision is affirmed.

Judgment affirmed.

RENDLEN, C.J., and HIGGINS, BLACKMAR and DONNELLY, JJ., concur.

WELLIVER, J., dissents in separate opinion filed.

CROW, Special Judge, dissents and concurs in separate dissenting opinion of WELLIVER, J.

BILLINGS, J., not sitting.

WELLIVER, Judge, dissenting.

I respectfully dissent.

Article III, § 39(10) of the Missouri Constitution provides: "The general assembly shall not have the power: ... (10) To impose a use or sales tax upon the use, purchase or acquisition of property paid for out of the funds of any county or political subdivision."

The principal opinion circumvents the plain, clear and unequivocal words of this provision by ruling that "[t]he sales tax is nothing more than a tax on gross receipts from the selling of goods or providing services at retail." *Supra* at 784. The majority ignores the apparent purpose of art. III, § 39(10) and distorts the holdings in our prior decisions in their quest to ever-extend the Director of Revenue's taxing power.

The majority relies on *State ex rel. Arenson v. City of Springfield,* 332 S.W.2d 942 (Mo. banc 1960), and *St. Louis Country Club v. Administrative Hearing Commission,* 657 S.W.2d 614 (Mo. banc 1983) as authority for permitting the Director of Revenue to assess the tax against the City of Springfield. I am convinced neither decision supports the result announced today. *Arenson* involved a challenge by the City of Springfield to a tax which the legislature authorized to be assessed against "special fuel" received, delivered, or placed in the fuel tanks of certain motor vehicles. The City used the fuel in its municipally-owned buses. The opinion distinguishes the tax therein levied from the typical sales or use tax, stating:

> We cannot escape the conclusion that the legislature intended that the tax was to be imposed on the *use* of the highways and not on the *use* of the fuel consumed in using the highways ... The tax was essentially a privilege or license tax imposed for highway use.

*Id.* at 948–49. It escapes me how a case decided on these grounds can support a decision authorizing a sales tax on municipally-supported services and activities.

Nor do I believe § 144.020 and § 144.010, RSMo Supp.1982, as interpreted in *St. Louis Country Club,* authorize the tax challenged herein. In *St. Louis Country Club,* this Court held that the Director of Revenue

may tax fees charged to members who brought in guests to club facilities. Though I did not sit in that case, I agree with much of what is stated in Judge Donnelly's dissent. *St. Louis Country Club* at 618. Whatever my views on the merits of that case, I fail to see how the result there has any bearing on the facts of this case. The principal opinion states that "it is apparent that the recreational facilities provided by the City in this instance would fall within the same taxing category and holding of the *St. Louis Country Club* case." *Supra* at 785. It is not apparent to me why recreational facilities provided by tax funds and for the benefit of the general public should be treated in the same manner as privately owned country clubs operated for the benefit of its members. The private nature of the recreational facilities in *St. Louis Country Club* renders that case wholly inapposite from the instance one. The majority's conclusion that rich and poor should be taxed alike as they pursue their recreational endeavors ignores the critical fact that the services and activities sought to be taxed herein are supported by *public funds*.

In my opinion, today's decision undermines the intended purpose of art. III, § 39(10). As a result of this decision, the state can take a cut of the moneys that political subdivisions generate to recover the costs of providing recreational activities and facilities. Even if the City is, as the majority contends, "selling ... goods or providing services at retail," these functions clearly constitute the "use, purchase or acquisition of property paid for out of the funds of any county or political subdivision." Thus, I must dissent from the Court's decision.