Richard A. KING, Director of Revenue, State of Missouri, Appellant,

v.

MOUND CITY INDUSTRIES, INC. and the Administrative Hearing Commission of Missouri, Hugh A. Sprague, Commissioner, Respondents.

No. 65204.

Supreme Court of Missouri, En Banc.

March 20, 1984.

John Ashcroft, Atty. Gen., Melodie A. Powell, Asst. Atty. Gen., Jefferson City, for appellant.

Robert J. Swift, Jr., Jefferson City, for respondents.

BLACKMAR, Judge.

The Director of Revenue filed a notice of appeal under § 161.337, RSMo 1978, and Art. V, § 3, Missouri Constitution, seeking review of a decision of the Administrative Hearing Commission which reversed the assessment by the Director of Revenue of a tax of $41,858.01 under the Missouri Cigarette Tax Law (Chap. 149, RSMo) against respondent Mound City Industries, Inc., a Missouri taxpayer. We have jurisdiction because the question for review involves the construction of the revenue laws of the state. Art. V, § 3, Mo. Const.

The issue is whether respondent is responsible for remittance of cigarette taxes to the State on unaccounted-for cigarettes that once were in its possession, pursuant to §§ 149.015 and 149.011(8), RSMo 1978. There are no substantial factual questions, and so discussion of the standard of review is not necessary. We conclude that respondent owes the cigarette taxes here in question and accordingly reverse the decision of the Administrative Hearing Commission.

Mound City Industries, Inc. is a cigarette "wholesaler" as defined by § 149.011(12), RSMo 1978. As a wholesaler, it must submit cigarette inventory reports to the Director of Revenue as required by § 149.-041.2, RSMo 1978, reading as follows:

Every wholesaler receiving unstamped cigarettes shall file a report with the director on or before the twentieth day of each month covering the previous calendar month, on forms prescribed and furnished by the director, disclosing the beginning and closing inventory of unstamped cigarettes, the beginning and closing inventory of stamped cigarettes, the beginning and closing inventory of cigarette stamps, the number and denomination of cigarette stamps affixed to packages of cigarettes, the beginning and closing inventory of meter machine units, the number of meter units purchased and affixed during the month, and all purchases of cigarettes by showing the invoice number, name and address of the consignee * * * or seller, the date, and the number of cigarettes purchased, and such other information as may be required by the director.

Section 149.015, RSMo Cum.Supp.1982 provides as follows:

1. A tax shall be levied upon the sale of cigarettes at an amount equal to six and one-half mills per cigarette.

Section 149.011(8) defines "sale" as follows:

"Sale", in this instance is defined to be and declared to include sales, barters, exchanges and every other manner, method and form of transferring the ownership of personal property from one person to another, and is also declared to be the possession of cigarettes for consumption, irrespective of how acquired; possession of cigarettes by any person other than a manufacturer, wholesaler or retailer shall be prima facie evidence of possession for consumption;

In the course of its business respondent purchases unstamped cigarettes from manufacturers and, upon receipt, stores the cigarettes in one of its two St. Louis area warehouses. Customer orders are filled from the unstamped stock. Before shipping cigarettes to a Missouri customer, respondent affixes the cigarette tax stamp required by § 149.015.2, and, in some cases, stamps required by other taxing units such as cities and counties.

The Department of Revenue conducted an audit of respondent for the period from August 31, 1979 to March 3, 1980 to determine its cigarette tax liability. The audit showed that 465,089 packages of cigarettes went through its warehouse without cigarette tax stamps having been affixed. Respondent does not dispute the findings.

During the audit period, respondent experienced cash flow problems which led its management to believe that some of its cigarette stock either was missing or had never been received. Extra controls were put into effect for the receiving and shipping of cigarettes. Respondent's management notified the St. Louis police of its suspicion of possible theft and police surveillance was conducted for two weeks at its two warehouses. The police surveillance uncovered nothing of a suspicious nature and the surveillance was withdrawn. After the audit period, the Pinkerton Detective Agency was hired in July of 1980 to conduct after-hours surveillance, but, like the St. Louis police surveillance, its efforts failed to produce any tangible evidence of theft.

Respondent notified the Director of Revenue of its inventory discrepancy only after it received notice of its tax liability for the unaccounted-for cigarettes. It grounds its refusal to remit the cigarette tax owing to the Department of Revenue on the basis that it did not collect the tax because, as it believes, the cigarettes were stolen. Testimony of its executives at the hearing indicated, however, that it has no real explanation as to why the 465,089 packages of cigarettes were missing. Counsel suggested the probability of an "inside job." This suggestion is of interest in view of the provisions of § 149.045, RSMo 1978 quoted below, regarding theft from a carrier.

It is the sense of the statutes that the public interest in the taxing of cigarettes be protected by holding the wholesaler responsible for the cigarette tax, once the cigarettes are accepted from a carrier. There are few instances in which cigarette tax is excused or waived, once the wholesaler acknowledges receipt from the carrier. Section 149.041.3 provides that

Any wholesaler who refuses any shipment or part of a shipment of unstamped cigarettes or has a shortage in the shipment of cigarettes consigned to him shall, in the monthly report next following the refusal or shortage, report to the director the number of packages or cartons of cigarettes refused or short and the name of the carrier from whom the cigarettes were refused or shortage occurred.

Section 149.045.2 reads as follows:

*Any consignee who discovers a shortage in transit after signing a receipt of delivery shall be held responsible for the full tax on the total amount of cigarettes shown on the receipt of delivery.* In all other instances of shortage in shipment of cigarettes as evidenced by waybill or invoice, the carrier shall be held liable for the tax due on all missing cigarettes unless the carrier shall furnish proof satisfactory to the director that the cause of the shortage was due to the theft of the cigarettes by a person outside the employment of the carrier. Provided, the proof is satisfactory to the director, the tax on the missing cigarettes shall be waived. The proof shall be stated on forms furnished and prescribed by the director. (Emphasis supplied).

Thus, the *only* time cigarette tax is expressly waived for *theft* is when the *carrier* can satisfactorily prove that the cigarettes were stolen by a person not employed by it. There are no provisions for waiver of the wholesaler's cigarette tax liability when the cigarettes are simply

unaccounted for as in the present case. We need not decide what the holding would be if a definite shortage could be demonstrated following a burglary, heist, or hijacking.

The apparent ·purpose of the rigidly drawn exceptions to the wholesaler's cigarette tax liability is to protect the State against "bootlegging" or cheating on the tax. *See ITT Canteen Corporation v. Spradling*, 526 S.W.2d 11, 20 (Mo.1975).

Mound City's contention that the tax is levied only upon the *sale* of cigarettes to the consumer as indicated by § 149.015.4 is not supported by the statutory language. That section provides that

It shall be the intent of this chapter that the impact of the tax levied hereunder be absorbed by the consumer or user and when the tax is paid by any other person, the payment shall be considered as an advance payment and shall thereafter be added to the price of the cigarettes and recovered from the ultimate consumer or user with the person first selling the cigarettes acting as an agent of the state for the payment and collection of the tax to the state.

The bare provision that the tax is ultimately to be borne by the consumers does not mean that the tax is not due unless there is a sale at retail. The statutory definition of "sale," quoted earlier, is a special definition. *Cf. N. Tilli & Sons, Inc. v. Commonwealth*, 420 Pa. 28, 215 A.2d 653 (1966). The broad intendment of the Missouri statute is to impose a tax on cigarettes which are consumed or available for consumption. The situations in which refunds are authorized, generally, are situations in which it can be said with assurance that the cigarettes in question will never be sold to Missouri consumers.

The State has a vital interest in the governance of cigarette wholesaling. Some people have an uncontrollable urge to smoke cigarettes, and will pay almost any price to obtain them. Governments have taken advantage of this proclivity by taxing the product heavily, and some people have responded by seeking a cheaper source of supply including, not infrequently, a bypass of the tax collector. The State has a proper concern in securing one of its prime sources of revenue. Section 149.015.3, indeed, enjoins the Director of Revenue to take firm steps to safeguard the State's interest in the manufacture and delivery of the tax stamps.

The statutes do not limit liability for the tax to situations in which the cigarettes are actually sold to Missouri consumers. Their purport, rather, is to require payment of the tax on all cigarettes which reach the wholesaler, unless the wholesaler can demonstrate that they cannot be sold at retail in Missouri. By the statutory plan the risk of mysterious disappearance is on the wholesaler rather than on the State. *See* § 149.045.2, *supra*. The legislature well might have thought that any less secure requirement would provide opportunities for evasion.

Statutory provisions differ, but it is not inappropriate to observe that the conclusion we reach is consistent with *N. Tilli & Sons, Inc. v. Commonwealth, supra; Lewiston-Auburn United Groceries, Inc. v. Johnson;* 253 A.2d 338 (Me.1969); *Daniels Tobacco Co., Inc. v. Norberg*, 114 R.I. 502, 335 A.2d 636 (1975); and *Calvert v. Zanes-Ewalt Warehouse, Inc.*, 502 S.W.2d 689 (Tex.1974).

The decision of the Administrative Hearing Commission is reversed and the case is remanded with directions to sustain the assessment.

RENDLEN, C.J., and HIGGINS, GUNN, BILLINGS, and DONNELLY, JJ., concur.

WELLIVER, J., dissents in separate opinion filed.

WELLIVER, Judge, dissenting.

I respectfully dissent. Until recently, no rule of statutory construction was more solidly entrenched in our case law than the rule requiring that we strictly construe revenue laws against the taxing authority and in favor of the taxpayer. A spate of decisions by this Court in recent years, however, have given little heed to this control-

ling principle of law in favor of a policy of allowing the taxation of anything the Director of Revenue's conscience will allow him to tax.[1] In line with this new philosophy, the majority today sanctions the Director's decision to tax unaccounted-for cigarettes under a statute authorizing the taxation of cigarettes sold in the state. Because I subscribe to the view that we are empowered to assess a tax only on the basis of the plain words of the statute, and not on the Director's whim, I must dissent.

Appellant contends its taxing authority eminates from § 149.015, RSMo 1978, which provides:

> A tax shall be levied upon the *sale* of cigarettes at an amount equal to four and one-half mills per cigarette.

(Emphasis added.) "Sale" is defined in § 149.011(8) to include:

> sales, barters, exchanges and every other manner, method and form of transferring the ownership of personal property from one person to another, and is also declared to be the possession of cigarettes for consumption, irrespective of how acquired; possession of cigarettes by any person other than a manufacturer, wholesales or retailer shall be prima facie evidence of possession for consumption;

Clearly, nothing within the plain terms of these provisions authorizes the tax appellant seeks to levy. Under our traditional rule of strict construction, such a determination would be dispositive of the case.

Apparently realizing that the statutes by themselves cannot justify taxing unaccounted-for cigarettes, the principal opinion goes on to consider a number of factors wholly extraneous to the words our legislature used when imposing the cigarette tax. The opinion purports to derive the "sense of the statutes," it considers the state's concern for protecting an important source of revenue, it speculates as to what "[t]he legislature well might have thought," and, finally, for good measure, it throws in decisions from other jurisdictions construing different statutes. These considerations may well be relevant when interpreting the general statutes of this state, but reference to such matters is entirely antithetical to a rule of strict construction.

If it is the policy of this Court to "secur[e] ... sources of revenue" for the state, then let us forthrightly decide our cases on that basis and drop the pretense of impartially construing tax statutes. But if we remain bound, as I believe we are, to follow long established rules of statutory construction, then I submit that we should resist the "uncontrollable urge" to assess a tax unless the statute, by its own terms, authorizes the tax.

I would affirm the judgment of the Administrative Hearing Commission.

1. See *City of Springfield v. Director of Revenue,* 659 S.W.2d 782 (Mo. banc 1983); *Mid-American Television Co. v. State Tax Comm'n,* 652 S.W.2d 674 (Mo. banc 1983); *Cities Service Gas Co. v. Administrative Hearing Comm'n,* 652 S.W.2d 684 (Mo. banc 1983); *Bemis Company, Inc. v. Administrative Hearing Comm'n,* 652 S.W.2d 685 (Mo. banc 1983); *Wells Aluminum, Inc. v. Administrative Hearing Comm'n,* 652 S.W.2d 687 (Mo. banc 1983); *Banquet Foods Corp. v. Administrative Hearing Comm'n,* 652 S.W.2d 689 (Mo. banc 1983); *Langley v. Administrative Hearing Comm'n,* 649 S.W.2d 216 (Mo. banc 1983); *King v. Laclede Gas Co.,* 468 S.W.2d 113 (Mo. banc 1983); *Central Cooling & Supply Co. v. Director of Revenue,* 648 S.W.2d 546 (Mo. 1982); *Star Service & Petroleum Co. v. Administrative Hearing Comm'n,* 623 S.W.2d 237 (Mo. banc 1981).